UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Michael Carroll and             :
Jenna Carroll,                  :
    Plaintiffs,              :
                                :
    v.                       :    No. 2:08-CV-138
                                :
Tropical Aquaculture, Inc. and  :
John Schramm, in his official   :
capacity as owner and President :
of Tropical Aquaculture, Inc.,  :
    Defendants.              :

### **MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
(Paper 9)

Plaintiffs Michael and Jenna Carroll have sued Defendants Tropical Aquaculture Products, Inc., and John Schramm alleging violation of the Vermont Parental and Family Leave Act ("VPFLA"), violation of the public policy of the State of Vermont, intentional infliction of emotional distress, and loss of spousal consortium. The matter is before the Court on Defendants' August 12, 2008 motion to dismiss. (Paper 9). A hearing on the matter was held on November 14, 2008. For the reasons discussed below, I recommend that Defendants' motion to dismiss Counts II, III, and IV be GRANTED and that with respect to Counts III and IV, Plaintiffs be given 30 days in which to amend the Complaint.

### I. BACKGROUND

Considering the facts in the light most favorable to Defendants and solely for the purposes of this motion, this Court

finds the following facts:

On or about December 1, 2006, Tropical Aquaculture Products, Inc. ("Tropical") hired Plaintiff Michael Carroll ("Carroll") as Vice President of Sales. Defendant John Schramm ("Schramm") was, at all times relevant to this action, President of Tropical. In early December, 2007, Carroll notified Schramm that he would be taking several days off in January, 2008 when his wife would be undergoing an in-vitro fertilization procedure ("IVF"). On January 9, 2008, Carroll sent Schramm an email specifying that his wife would be undergoing procedures on January 11 and 14, 2008. On January 10, 2008, Schramm told Carroll that he was angry that he had requested time off for his wife's surgery, that he was under suspension, and that he was not to return to work until the following week. On January 16, 2008, Carroll contacted Schramm about returning to work, at which time Schramm used profane language and verbally attacked him (Carroll). In the course of the conversation, Carroll was discharged or constructively discharged. During the period that Carroll had been Tropical's Vice President of Sales, the company experienced double-digit revenue, and he exceeded his performance expectations during calendar year 2007.

Plaintiffs have brought this action pursuant to the VPFLA, alleging that Defendants wrongfully discharged Carroll in violation of the VPFLA (Count I); that Carroll's discharge was in

violation of the public policy of the State of Vermont (Count II); that Defendants' conduct in discharging Carroll constituted Intentional Infliction of Emotional Distress (Count III); and, that as a result of Defendants' illegal actions, Jenna Carroll suffered loss of spousal consortium (Count IV).

## II. DISCUSSION

Motion to Dismiss[1]

On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept as true the factual allegations in the complaint, and must draw all inferences in the plaintiff's favor. See Natural Res. Def. Council v. Johnson, 461 F.3d 164, 171 (2d Cir. 2006)(internal quotation omitted). To survive dismissal, a complaint must plead enough facts to be plausible on its face. Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)). See also ATSI Comms., Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007)("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient to 'raise a right to relief above the speculative level.'" (quoting Twombly, 127 S. Ct. at 1965)). Dismissal,

---

[1] Although Defendants' motion to dismiss was filed after they had filed an answer to the complaint, precluding consideration of its arguments pursuant to F.R.Civ.P. 12(b2222)(6), the parties addressed the motion at hearing as a motion to dismiss the Amended Complaint, (Paper 33), to which no responsive pleading has yet been filed. Accordingly, it is appropriate to consider the motion according to the standards of Rule 12(b)(6).

however, is only appropriate if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Field Day, LLC v. County of Suffolk, 463 F.3d 167, 192 (2nd Cir. 2006). Defendants concede that, as amended, Count I of the complaint, which alleges violation of the VPFLA, is not amenable to dismissal pursuant to the provisions of Rule 12(b)(6). They maintain, however, their challenge to Counts II - IV. For the reasons discussed below, I recommend that Defendants' motion to dismiss Count II of the Amended Complaint, (Paper 9) be GRANTED. I also recommend that the motion to dismiss Counts III and IV (Id.) be GRANTED without prejudice, and that Plaintiffs be given thirty days to amend their complaint in light of the pleading requirements of the alleged tort of Intentional Infliction of Emotional Distress and the derivative claim of Loss of Spousal Consortium.

1. Count II: Violation of the Public Policy of Vermont

Having articulated a claim for violation of the VPFLA in Count I, Plaintiffs also assert that the actions constituting that violation also constitute a violation of the public policy of the State of Vermont." (Paper 33, ¶ 32). Plaintiffs contend that Vermont has a history of policy support for supporting and strengthening families and for promoting marital harmony, and that refusing Michael Carroll's request for leave to attend and participate in his wife's IVF procedure was a cruel and shocking

4

violation of these principles. (Paper 15 at 14). They further submit that the VPFLA does not provide an adequate remedy for an individual wrongfully terminated in violation of the VPFLA, thus necessitating a common law claim to ensure sufficient potential recovery.

Under Vermont law, an employee hired for an indefinite period is presumed to be an at-will employee. Taylor v. Nat'l Life Ins. Co., 161 Vt. 457, 462, 652 A.2d 466, 470-71 (1993). An at-will employee may be discharged at any time, with or without cause, "unless there is a *clear and compelling* public policy against the reason advanced for the discharge." Dulude v. Fletcher Allen Health Care, Inc., 174 Vt. 74, 82, 807 A.2d 390, 297 (2002)(quoting Jones v. Keogh, 137 Vt. 562, 564, 409 A.2d 581, 582 (1970))(emphasis in original).

In 1991, the Vermont Legislature articulated the public policy underlying the establishment of the VPFLA:

> (a)Strong families are the foundation for a productive and competitive state. There are a growing number of single parent families where the sole parent works and two parent families where both parents work. Most people who work while raising families do so out of economic necessity.      (b) Leave from employment for the birth or adoption of a child or to care for a seriously ill family member addresses one of the important needs of *changing family structures*. The support of families is a principle recognized and valued by the state of Vermont. When employees have security about their employment and the well-being of their children, parents and other family members, businesses benefit economically from increased worker productivity and stability.         (c) The provisions of this subchapter are enacted in recognition that both employers and employees benefit

>     from the *establishment of parental and family leave as a condition of employment.*

21 V.S.A. § 470 (2003)(emphasis added).  Acknowledgment of the public policy justification for the VPFLA does not equate, however, to the establishment of a common law cause of action.  "Under Vermont law, where a statute creates a right or remedy unknown at common law, the statutory remedy preempts a common law cause of action."  <u>Decker v. Vermont Educational Television, Inc.</u>, 13 F. Supp. 2d 569, 573 (D. Vt. 1998)(citing <u>Winney v. Ransom & Hastings, Inc.</u>, 149 Vt. 213, 214, 542 A.2d 269, 270 (1988).  <u>See</u> <u>also</u> <u>Thayer v. Herdt</u>, 155 Vt. 448, 455, 586 A.2d 1122, 1126 (1990)("When 'a statute prescribes the mode of enforcing it [the cause of action], that mode alone can be resorted to.'" (internal quotations omitted)).  This principle of preemption has been an underpinning of Vermont civil law for more than 100 years.  <u>See</u>, <u>e.g.</u>, <u>Thayer v. Partridge</u>, 47 Vt. 423, 428 (1875) (quoted in  <u>Winney</u>, 149 Vt. at 214).  The Vermont Supreme Court has found that the <u>absence</u> of a statutory directive does not preclude a finding of a public policy basis for a cause of action.  <u>Payne v. Rozendaal</u>, 147 Vt. 488, 520 A.2d 586.  In this case, however, Plaintiffs assert a common law claim on the basis of public policy notwithstanding and in addition to a statutory remedy, premised on a clear and compelling public policy predating the VPFLA.

This Court has previously found the public policy exception

to at-will employment could not prevent an employer from discharging an employee for absences related to personal or family illness. Sargent v. Columbia Forest Products, Inc., No. 2:93-CV-116, 1994 WL 902818 at *5 (D. Vt. 1994) ("Although an employer's practice of counting sick days as unexcused absences may be a distasteful practice to some people, it cannot be said to violate a clear and compelling public policy."). Moreover, the Vermont Legislature, in enacting the VPFLA, expressly acknowledged that the need for the law arose out of the "important needs of *changing family structures*." 21 V.S.A. § 470(b)(emphasis added). The plain meaning of "establishment of parental and family leave as a condition of employment" (id. at (c)) suggests the implicit recognition by the Legislature that, absent the VPFLA, employees in Vermont had no recourse when family needs and medical problems required them to seek leave from their employment. In other words, the legislative intent in enacting the VPFLA was to establish statutory rights and remedies where none previously existed.

Plaintiffs further argue that a common law claim for wrongful discharge is necessary because the remedies available under the VPFLA are insufficient to compensate them for their losses and to dissuade Defendants from future wrongful conduct. They also suggest that a common law claim must be maintained in the event that Plaintiffs claims are not cognizable under the VPFLA because Jenna Carroll's health problems underlying Michael

7

Carroll's leave request might not constitute a "serious illness" as defined in the VPFLA. (Paper 15 at 12). Neither of these assertions can support a supplemental common law action for wrongful discharge.

The VPFLA does not purport to supplant the needs of employers in deference to those of employees, but instead expressly finds that its provisions "are enacted in recognition of the fact that both employers and employees benefit from the establishment of parental and family leave as a condition of employment." 21 V.S.A. § 470(c). The construction of the VPFLA suggests careful consideration of which employers and employees would be subject to its provisions, excluding very small employers from its requirements.[2] The VPFLA also specifically articulates the circumstances under which leave is protected, and defines for the purposes of family leave the elements that constitute serious illness. 21 V.S.A. § 471. It also delineates how leave under the VPFLA might effect or be affected by accrued sick leave, accrued vacation leave, or other accrued leave, how and where the provisions of the VPFLA should be posted by the employer, the nature of notice an employee is expected to give, the temporary replacement of employees, and so forth. 21 V.S.A. § 472. In other words, the VPFLA's degree of detail demonstrates

---

[2] For example, under the provisions of the VPFLA, an employer for the purposes of parental leave is one which employs ten or more individuals for an average of at least than 30 hours per week, and for the purposes of family leave, employs 15 or more individuals for at least 30 hours per week. 21 V.S.A. § 470(a).

the degree of care and attention undertaken by the Legislature in its inception.  The possibility that the basis of a leave request is not sufficiently serious so as to invoke the protections of the VPFLA cannot justify the creation by this Court of an alternative remedy.

Under Vermont law, the long-standing principle of preemption has also been extended to the availability of remedies.  See, e.g., Town of Brattleboro v. Watt, ("If the statute which imposes a new duty also provides a particular remedy, that remedy is usually the only remedy the injured party has."); Dewey v. St. Albans Trust, 57 Vt. 332 (1985) ("Here is then a liability created by statute which did not exist at common law and for which there was when it was created and ever since has been a statutory remedy.  Such statutory remedy is exclusive.") More recently, the Vermont Supreme Court has maintained its reluctance to allow remedies beyond those fashioned by the Legislature.  In Shields v. Gerhart, the court considered whether damages beyond those established by the Legislature could be found in the face of alleged constitutional violations and held that while "it may be appropriate to imply a monetary damages remedy to enforce constitutional rights where the Legislature has fashioned no other adequate remedial scheme[,] [w]here the Legislature has provided a remedy, although it may not be as effective for the plaintiff as money damages, we will ordinarily defer to the statutory remedy and refuse to supplement it."  163 Vt. 219, 234-

34, 658 A. 2d 924, 934 (1995).

The VPFLA provides that:

> . . . an employee entitled to leave under this subchapter who is aggrieved by a violation of a provision of this subchapter may bring a civil action for temporary or permanent injunctive relief, economic damages, including prospective lost wages for a period not to exceed one year, attorney fees and court costs.

21 V.S.A. § 474(b). Plaintiffs contend that the remedial scheme crafted by the Legislature is categorically inadequate as it "does not even come close to providing an adequate statutory remedy for an individual wrongfully terminated in violation of the VPFLA. . . ." (Paper 15 at 11). Thus, they seek to have this Court substitute its own judgment for that of the Legislature, which it should not do.

In light of Vermont's long-held adherence to the principle of preemption in terms of both statutory right and remedy and the plain reading and careful construction of the VPFLA, I recommend that Defendants' motion to dismiss Count II of the complaint be GRANTED.

2. Count III: Intentional Infliction of Emotional Distress

Under Vermont law, in order to state a claim for Intentional Infliction of Emotional Distress ("IIED"), a "plaintiff has a heavy burden to make out a case of outrageous conduct. The conduct complained of must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable

in a civilized community." Demag v. American Insurance Companies, 146 Vt. 608, 611, 508 A.2d 697, 699(1986)(quoting Restatement (Second) of Torts § 46, Comment d (1965). See also Colby v. Umbrella, Inc., 955 A.2d 1082, 1091 (Vt. 2008)(citing Boulton v. CLD Consulting Eng'rs, Inc., 175 Vt. 413, 427, 834 A.2d 37, 49 (2003); Dalmer v. State, 174 Vt, 157, 171, 811 A.2d 1214, 1227 (Vt. 2002); Price v. Delta Airlines, Inc., 5 F. Supp. 2d 226, 237 (D.Vt. 1998). In order to make a prima facie case of IIED, a plaintiff must demonstrate 1) extreme and outrageous conduct; 2) done intentionally or with reckless disregard of the probability of causing emotional distress; 3) resulting in the suffering of extreme emotional distress; and 4) the extreme emotional distress must be actually or proximately caused by the outrageous conduct. Mancini v. General Electric Company, 820 F. Supp. 141, 148 (D. Vt. 1993); Costello v. Gannett Satellite Information Networks, Inc., 939 F. Supp. 313, 316 (D. Vt. 1996); see also Denton v. Chittenden Bank, 655 A. 2d 703, 706 (Vt. 1994); Thayer v. Herdt, 155 Vt. 448, 455 (1990); Crump v. P & C Food Markets, Inc., 154 Vt. 284, 296 (1990). Plaintiffs' burden on a claim for IIED is a "heavy one." Dulude v. Fletcher Allen Health Care, Inc., 174 Vt. 74, 79, 807 A. 2d 390, 398 (2002), citing Gallipo v. City of Rutland, 163 Vt. 83, 94, 656 A.2d 635, 643 (1994). "The standard is a high one: the conduct must be so outrageous in character and so extreme in degree as to go beyond all possible bounds of decent and tolerable conduct in a

civilized community." Farnum v. Brattleboro Retreat, Inc., 164 Vt. 488, 498 (1995)(citing Denton, 163 Vt. at 66). Moreover, "[t]he test is objective; the plaintiff must show that the harm resulting from the inflicted distress was so severe that no reasonable person could be expected to endure it." Id. (citing Baldwin v. Upper Valley Services, Inc., 162 Vt. 51, 57 (1994)). Whether the alleged conduct was so extreme that a trier of fact could find liability is a threshold question of law. Id. (citing Denton, 163 Vt. at 66). Liability for IIED cannot be grounded in "mere insults, indignities, threats annoyances, petty oppressions, or other trivialities." Fromson v. State of Vermont, Department of Corrections et al., 176 Vt. 395, 399, 848 A.2d 344, 399 (2004). Legal conclusions are not sufficient to maintain an IIED claim, and in a wrongful discharge case, termination of employment alone cannot suffice. Colby, 955 A.2d at 1089. The manner in which the termination is executed must "evince 'circumstances of oppressive conduct and abuse of a position of authority vis-à-vis plaintiff' to support such a claim." Id. (quoting Crump, 154 Vt. at 296, 576 A.2d 448). A claim for IIED should allege "at least one incident of behavior that transcends the ignoble and vast realm of unpleasant and often stressful conduct in the workplace. . . ." Denton v. Chittenden Bank, Inc., 163 Vt. 62, 66, 655 A.2d 703, 706 (1994).

Plaintiffs have alleged that in the course of terminating Michael Carroll's employment, John Schramm used "profane

12

language" and "verbally attacked" Michael Carroll. (Paper 33, ¶ 15). Plaintiffs further submit that in discharging Michael Carroll, Defendants' conduct was "extreme and outrageous;" that they acted with "malice and intended to cause Michael Carroll emotional distress;" that their actions "manifested personal ill will and oppression;" and that Schramm's "profane words, his aggressive behavior and his hostile actions on January 16, 2008 as well as in the months and weeks leading up to that date led Mr. Carroll to fear for his physical safety." (Paper 33, ¶ 35-37). As a result of his discharge, Plaintiffs assert, Michael Carroll "suffered and continues to suffer emotional distress." (Paper 33, ¶ 38).

While it may in fact be the case that Plaintiffs can establish that Schramm's conduct was so outrageous as to "go beyond all possible bounds of decency," and to be regarded as "atrocious, and utterly intolerable in a civilized community," the facts as alleged cannot be reasonably construed as going beyond "mere insults, indignities, threats" transcending the "ignoble and vast realm of unpleasant and often stressful conduct in the workplace."  Because I find that Plaintiffs have failed to allege sufficient facts to state a claim for IIED, I recommend that Count III be dismissed without prejudice and that they be given 30 days in order to amend their Complaint in light of the pleading requirements of an IIED claim.

3. Count IV: Loss of Spousal Consortium

Plaintiffs' claim of Loss of Spousal Consortium is derivative of their IIED claim in Count III. Because I have recommended that Count III be dismissed without prejudice, I also recommend that Count IV be dismissed without prejudice, subject to re-filing upon the amendment of the Complaint to state an IIED claim.

CONCLUSION

For the reasons set forth above, I recommend that Defendants' motion to dismiss Counts II, III, and IV of the Amended Complaint (Paper 9) be GRANTED. I further recommend that with respect to Counts III and IV of the Amended Complaint, Plaintiff be given thirty days in which to amend the pleadings. Defendants' motion to dismiss Count I of the Complaint should be denied as MOOT in light of the Amended Complaint.

Dated at Burlington, in the District of Vermont, this 2nd day of January, 2009.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. Failure to file objections within the specified time waives the right to appeal the District Court's order. See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).